The last case this morning is Magnolia Medical Technologies v. Kurin, Inc., 2024-2001. Mr. Perry. Thank you, Judge Laurie, and may it please the Court. Having sat here all morning, I bring to you a de novo review of a pure legal issue. It is error under many of this Court's precedents to issue a claim construction after the jury has returned a verdict. That is what Judge Connolly did here. That is reversible error. Why did you ask for claim construction of these terms beforehand? You know, I understand there's lots of terms. District Court judges don't want to construe a lot of claims. I sympathize with them on that. But for claims like this that seem to be at least part of the point of novelty and to go with plain and ordinary meaning and then determine after the fact that the parties don't actually agree on the meaning of these terms as used in the claims is very frustrating to us at the appeals court. Your Honor, two answers. One is I do understand the frustration. Second is, Kurin asked for a claim construction of these claims very early and then dropped that construction in the narrowing process, right, as happens in these cases, so that that was the choice and the parties didn't have a dispute. But more importantly and more substantively, I don't think there is a dispute on the meaning of these claims. I think there's a dispute. No, no, no. There may not be, wait, let me remind you, we have three cases and I've already lost my train of thought. We're talking about the vent and the seal. There may not be a dispute about those terms isolated, what a vent means and what a seal means. But in the context of the claim itself and how they operate and whether it can be one structure or two structures, there's a dispute. And it seems to me that should have been resolved at claim construction. If it has to be two, then they don't infringe. If it can be one, then possibly they infringe. What are we to do with that when there's no claim construction in advance? And the jury doesn't know that either. So my client, Magnolia, the patent holder, we came forward with our infringement expert report before trial and set forward the theory of infringement on which this case was tried to a jury, which was the porous plug is a single structure that is both a vent and a  seal. Vent noun and seal noun, I think it's important to remember this because this is the real debate in this court, right? Not vent verb and seal verb. The porous plug is a vent noun and a seal noun. That was our theory of infringement as announced in the expert report before trial. They took his deposition. They knew exactly we had infringement contentions, it's a Delaware case. They knew exactly what the theory was. And Curran didn't make a beckton motion that there had to be two structures. They didn't move to Dalbert him on that ground. They didn't move to strike his testimony on that ground. They didn't object to his testimony on that ground. It was our position that it was a single structure that has both functions and that there's nothing in the claim or limitation. But you didn't ask for a claim construction. We didn't need a claim construction. I understand. Well, I don't because I don't try patent cases, thank God. I do try other cases, but not patent cases. But you think you don't need it, but now you're here because there wasn't clarity on whether this had to be a unitary structure or it had to be two structures. I fundamentally disagree with that judgment. Counsel, we can read the claims ourselves. In this, claim one of the 483 patent doesn't talk about a sealing function and a vent function where they might both be satisfied by one item. Here it says a seal member and a vent. It seems pretty clear that they're two separate items. Your Honor, that was the argument that Curran made for the first time in its post-verdict JMOL. It cited the Becton case and said those are two functions that have to be done by, or two structures that have to be separate structures under Becton. But didn't they argue to the jury that there has to be a vent and a seal separately? They argued to the jury, Your Honor, that they had to function separately. This is why I stress the difference between a noun and a verb. The claim, it's a device claim, it's an apparatus claim, as my friends point out. If it has a vent, a vent that is not venting is still a vent. A seal that is not sealing is still a seal. An open seal that is not a seal because it's leaking like crazy, isn't it? Well, I drove into my old minivan this morning and the air was blowing on me, so I closed the vent. A closed vent is still a vent, just as an open seal is still a seal. And to go to both of your points, Judge Hughes and Judge Lurie, my friends on the other side have been very well represented in this entire case. This Becton argument, every patent lawyer knows that if you've got separately described functions or structures, you may have a Becton argument. It was never raised. It wasn't raised at claim construction. It wasn't raised in a Daubert. It wasn't raised in pretrial. They didn't seek a jury instruction on it. Okay, they tried the case on the factual question. They made the argument through their expert in a closing argument. But we're disputing the claim and it says a vent and a seal. You want us to read out the word and. You want there to be no moment in time when there's infringement. Your Honor, there is a moment in time. There is a vent and a seal. The porous plug is both a vent and a seal. It vents and seals as a verb at different times, but it is still a vent. It cannot be a vent and a seal at the same time. Your Honor, it is a vent and a seal at the same time. It is at the same time. Your view is it's a vent and a seal, but it functions as a vent at one point in time and as a seal at another point in time. And because this is a device claim, not a method claim, the fact that the function is in series doesn't change the fact that the structure is existent in the device. This, Your Honor, is a single structure that has a vent and a seal. It vents. I close the valve. It seals. Every valve is a vent and a seal. It's a single structure that as the noun, as the structure requires, is a vent and a seal. But you would agree, I think, all right, if the district court did claim construction, you would disagree with the claims construction, but if the proper claim construction were that the vent and seal were separate structures, then you would have a problem. But we didn't get that. Well, we got that after the verdict. Yes. Now, we disagree with it as a matter of claim construction. To be clear, Judge Lurie, you raised Claim 1. Claim 24 specifically says that the seal has to be configured to transition from a first state to a second state. And the specification, in fact, says that the steps can be done either concurrently or sequentially. So we have intrinsic record evidence that this is a machine. It moves. It changes, right? As the blood flows through it, it changes state. So this is the difference between structure and function. Am I correct that the embodiment in your patent, though, shows the vent and the seal as separate structures? One of the preferred embodiments illustrated, yes. But of course, we don't compare the claim to the preferred embodiment or to our device. Are there any embodiments that show it as the same structure? There are not, Your Honor. But there's all the usual disclaimers. And these claims are written much more broadly than those embodied. And I need to come back to this. This was an argument. It is a claim construction argument. Two structures in one. There's 100 Becton cases from this court. This is an argument that was raised for the first time after the verdict. This is what I'm struggling with, which is it clearly is a claim construction argument. I think it should have been resolved so that the jury could have been told. What happens when there is no claim construction, and so it just goes to the jury, and they get it determined? Are you arguing some kind of forfeiture on their behalf? That's exactly right, Your Honor. This court's cases in the Hewlett-Packard versus Mustek case, Weiland versus Apple, there's a whole bunch of them where if the case goes forward, there's no objection to the instructions, because the instructions said, apply plain and ordinary meaning if I haven't construed it, and the jury returns a verdict, the judge cannot then construe the claims differently. It's too late once the jury is charged. And so your view is that because there was no specific claim construction, the jury was free to find that the vent and the seal could be in the same structure? Correct. And in fact, Your Honor, and this goes, Judge Freeman, to your question earlier, the jury was instructed to apply the plain and ordinary meaning within the context of the patent, as applied by a person of ordinary skill in the art. That's the jury instruction. And we had Dr. Antonsen and Dr. Santiago testifying as to how a person of skill in the art would understand it. They disagreed. That's a battle of the experts, and the jury, obviously, decided with Dr. Santiago. I want to add one more complication, and that is, I understand that we have a presumption in claim construction law that when things are set out separately in a device claim, that they're separate structures. How does that come into play with the jury? Are we supposed to presume that a jury would know that? Because of course, that would be, maybe as a matter of law, we would. But I can't imagine that the jury would know that presumption. And so it really, because that's some of the case law they're citing on claim construction. But of course, no claim construction was done. That's correct, Your Honor. No, the jury is going to listen to the experts as to whether there's infringement. That's the factual question from the jury. The legal question in claim construction, if a judge hasn't construed the claim, as this court's made clear, it's any reasonable construction supported by the evidence. And we have two experts here testifying different ways on this. That happens. So your view, I'm sorry to keep interrupting, but I'm going to, is that a single structure or a dual structure is reasonable claim construction on this point because there was none? If we found that it was just simply looking at this, there's no way a reasonable juror could have said this can be in a single structure, then you'd have a problem. But your view is, the experts testify, your expert testified, that it's reasonable to think that this device is a seal and a vent. Correct, Your Honor. And that structurally, anyway, there are many structures. And that we can't back it out and say, that's not reasonable because this claim clearly says these have to be independent structures. It is not so clear. I mean, Becton, for example, where it is physically, literally impossible to have a structure that did both of the things, the swing arm and the hinge thing, this is not physically impossible. Every valve is a single structure that is both a vent and a seal. And there's a category of structures that does that. They're called valves. And in fact, I asked one of my associates to type into chat GPT, give me an example of a single structure that is both a vent and a seal. The number three answer is hydrophilic porous plug, which is what we have here, which is a structure that is known in the art of fluid mechanics that is a vent until it's a seal when it is in contact with liquid. And valves can operate mechanically, electrically, by pressure, by fluid. That is not evidence in the record. Your Honor, it's the common sense of it. My friends over here say, ignore the testimony of open seal. And I say, don't ignore the testimony of closed vent, right? We're talking in the real world. And we know structures. Counsel, let's move to a double-oh-one patent. Yes, Your Honor. Is there any case law on whether diverter has been found to be a means or was found not to be a means? In this court, the structured diverter has never been construed one way or the other. The function of diversion has come up a handful of times, but not in any way relevant, as best my research tells us, to what we have here. Well, and the court found that figures six and seven, A and B, show diverters that Conan doesn't use. Correct. There are. That's the reason for the stipulation. There are examples of diverters in this specification. And the whole question, of course, in that half of the appeal is whether it's a means plus function claim. Because if it's not, then it doesn't pick up. It's not limited to the examples in the embodiment. Are there other examples of diverters in the specification? Not in the specification, but the extrinsic evidence. Well, that's what counts with means plus function. Well, yes, Your Honor, which is why we say it's not a means plus function term. It's a structural term that has structure recited in the claim itself. We have an inlet, two outlets, and the pressure equalization configuration requirement, which says that this is a fluidic diverter rather than a mechanical diverter. If I could reserve the balance of my time. We'll save three minutes for you. Thank you, Your Honor. Mr. O'Quinn. Thank you, Judge Lurie. May it please the Court, John O'Quinn on behalf of Karen. Judge Hughes, to the extent that this is viewed as being a claim construction issue, and I'll come back to how I think it's really more of a failure of proof issue, but to the extent that it is, I think this Court's decision in Kyocera versus ITC controls the outcome here, and it controls the outcome in our favor. And the reason for that is because, as you alluded to a moment ago, in cases like Kyocera, Beckman Dickinson, and Google versus Echo Factor, there's, quote, a presumption that separately listed claim limitations include separate distinct physical functions. That's a principle of claim construction. That's a principle of law. And this Court of claim construction specifically agree with that. And juries don't do claim construction. Agree with that as well. Presume that the jury applies that presumption. So in Kyocera, this Court dealt with the issue where the claim construction was plain and ordinary meaning. And the argument on appeal was that there was a failure of proof. And the Court said that's better viewed as a claim construction issue, that there was no party that identified claim language overcoming the presumption that two elements are distinct components. This is a classic case, this Court said, just like in Weiland, that a court I understand, but this case is a lot, this case really troubles me, Mr. O'Quinn, because it was clear from the outset what their infringement contention was, what they were targeting as a venture of the seal. So they, even though they didn't raise it as a claim construction argument, and you didn't apparently raise it, they were necessarily saying the vent and the seal were one structure. And to be clear, this isn't any kind of unfair surprise on your behalf. Everybody knew what was being targeted. And if this was a claim construction problem, then something needed to tell the district court that we have a disagreement about the claim and whether it can be one structure or two before it goes to trial and not do it after the fact. Because that's where this turned out. If I agree with them that the vent and the seal in this claim can overcome that presumption and be a single structure, then they win, don't they? Well, they don't, and I'll come to why they don't in just a second. But just to finish out the thought, first of all, Keir Sayer, again, was applying the presumption in the context of plain and ordinary meaning. The plain and ordinary meaning is that they are separate structures. That is what this court concluded in Keir Sayer. And then second, in terms of putting the district court on notice, mid-trial, in the context of making the 50A motion, we specifically said, quote, there are some issues based on the vent and seal terminology, and raised this very issue. So this isn't an issue that they were sandbagged with after trial. This was raised during trial. The court didn't, at that point, view it as an O2 micro problem. And I don't think the district court ultimately viewed this as an O2 micro problem, because it just enforced the all-elements rule, applying the plain and ordinary meaning. And the plain and ordinary meaning mean that these are presumptively separate structures. They're the ones, if they wanted to do something other than the plain and ordinary meaning being separate structures, they're the ones who had the burden on this. Now, having said all of that, at the end of the day, I would get that if their arguments for infringement hadn't at least implicitly contradicted that presumption. Well, Judge Hughes, the issue is their arguments for infringement aren't really based on structure, and saying that this is the structure of a vent and the structure of a seal. Their arguments for infringement are based on capability of performing a function. And the problem is these claims, just like the claims in Ball-Aerosol, are not drawn towards capability. And indeed, they don't recite something that's capable of venting or capable of sealing. If you look at Claim 24, it requires that you have the, these are apparatus claims, it requires that you have the structure of a seal, and that you have the structure of a vent. And it requires that you have them at the same time. And the reason that I say that is because at the same point in time, the first operating mode, the volume of blood has to be allowed to flow towards a seal. And at that exact same time, you have to have them. I understand your argument on this. This is claim construction. Well, it's. And you're asking me to do de novo claim construction after a jury has found the opposite on infringement. Well, respectfully, I'm not. I mean, when the word at the exact same time requires that blood flow towards the seal, and that you have a vent be configured to allow air to exit, then those are separate words. They have separate meaning. They were given their plain and ordinary meaning. It's just claim construction. Well, Judge Chivas, respectfully, they didn't try to prove to the jury that this is something that a person of ordinary skill in the art, this plug, would understand is a seal. Their entirety of their, or that it is a vent, the entirety of their proof, and I encourage you to look at appendix, excuse me, at appendix 25, 573. So your argument is they didn't prove that there's a seal at all? Not that this structure can't be a vent and a seal because it's not a vent and a seal at the same time? Well, my point. That's not the way I understand the argument. My point, Judge Hughes, is that their proof was entirely based on function. And indeed, their whole argument on appeal, if you look at their opening brief at pages 23 and at 38, their argument is, well, you can have things that perform different functions. And that really goes to what a method claim would be. This is an apparatus claim that you have to, the apparatus claim has to have the feature of a seal, and it has to have the feature of a vent. And whether or not it has to have it at the same time, the answer to that question for an apparatus claim is clearly yes, because under this Court's decision in Lemelson, infringement can only occur for an apparatus claim under 271A if the claim combination has been assembled. And I think this Court's decision in Viatek, 733F of Federal Appendix 542, it's cited in the briefs, goes to exactly this. In Viatek, you had a file in the first configuration. That file would become the database in the second configuration. But you had no configuration that had both the file and the database, and this Court affirmed the summary judgment of no infringement. There was no view that this was a claim construction issue. What you had there was a file that had to become a database. You could have said, well, it's both a file and a database, but that's based on the idea that it's going to become something in the future. It's not that yet. And that's true with respect to the seal. The proper claim, I know you disagree with this, but the proper construction of this is that the vent and the seal can be a unitary structure. So, I... Doesn't the current plug infringe? No, I don't think that it does, because I don't think that the current... I don't think there's any evidence that the plug by itself ever is a seal. In fact, it cannot be a seal. If you have the plug in isolation, it will never be a seal. It cannot. It's just a sponge that air or fluid can run through. The testimony is only when liquid is added. This is the testimony from their expert at Appendix... Wait, are you saying that when the liquid hits it and it closes that it's not a seal? No, no. What I'm saying is that at that point, it's kind of acting like... So, here, let me, if I'm not... I understand your... What I'm not buying is the notion that it has to be a vent and a seal at the same time. That kind of function, to me, is not relevant to the claim construction. What's relevant to me is, can a unitary structure be a vent and a seal, even if it's a vent and seal at different times? So, depending on how the claim is written, if a claim was written to capability, if a claim was written to functionality, it could be. But in terms of... I'm not being very clear. My view is, hypothetically, if that's what the claim... Proper claim construction is, is that it doesn't have to be a vent and a seal at the same time, that one unitary structure can be both a vent and a seal, even if it's a vent for part of the time and a seal later. Is your view there's no evidence in the jury verdict or given to the jury to support that? I think on these facts, and there's no evidence to support that the plug itself becomes by itself a seal. And what I'm trying to get at, if you look at Appendix 25-574, their expert testifies it becomes a seal, and the way it becomes a seal is a physical transformation. By itself, the plug will never be a seal. When liquid is added, it acts like a modern super-absorbent diaper. But the plug itself, once the liquid hits it, is a seal. The plug and the liquid combined form the seal. The plug and the liquid combined form the seal. The seal by itself... So when you have the device sitting on a shelf, that plug is not capable of ever sealing anything. It's not even capable of becoming a seal. What makes it capable, as their own expert testified, it goes to the moisture of the blood. This is Appendix 25-534, and Appendix 25-535, and again at Appendix 25-841, our expert talks about this. It's basically gotten the material of a super-absorbent diaper. I mean, I also don't buy this argument that the seal has to operate the seal all by itself. In the patent, the seal doesn't spring into being somehow. It's through air pressure and stuff like that that causes it to seal up. Sure. Here, it's a liquid, and I think there may be some air pressure involved, but you know the facts of your device better than me. So it's not that the proper claim construction of the patent claim has to be that it's sealed without any kind of effects from other events. So the fact that it's the blood causing it to seal doesn't mean to me that it's still not a seal once the blood hits it. Well, again, by itself, it's not the plug that does the sealing. It's the combination of the two. You now have something new. In the patent, it's the combination of the change in air pressure kicking the seal in. But Judge Hughes, fundamentally here, this is again an apparatus claim. It's not a method claim. I mean, I understand where you're going. All you're convincing me of is that there needed to be claim construction. Well, and I do think that to the extent that this court ultimately concludes that the right way to view this is as a claim construction issue as opposed to a failure of proof issue, then the prudent thing for this court to do would be to remand in order for the district court to be able to assess, number one, whether or not this is within the scope of Weiland v. Apple, just an elaboration on the meaning inherent in the previous construction. Counsel, is it your view that when one reads the claim and recites the portion that recites the seal member and the vent member, that they necessarily, from reading the claim, must operate at a different time, and that therefore they are separate? Yeah, my read of both claims is that the seal or the seal member, and those mean the same thing, there was no dispute about that, and the vent must exist at the same time. It has to be capable of sealing and venting at the same time. Again, the claims aren't drawn to capability. I'm just using that language because all they proved was that at one point in time it can vent, and at another point in time it can seal. That doesn't sound like how the patent works. It vents for a while, and then when the air pressure changes, it seals. They're not venting and sealing at the same time. Air pressure has nothing to do with the patent, in the sense of the way that if you look at the device. Well, there's something that causes the seal to kick in, in the patent. It is not venting and sealing at the same time in the patent. It actually is. If you look at the structure. That's not clear to me, and you're not going to win that argument to me here, because it seems to me that patent reads the blood flows through for a certain time, and at a certain time a seal kicks in, and then it goes a different way. At a very high level, I can't learn the facts of these cases in detail. That's the way it operates. Let me explain. I would highly encourage you to look at the two videos as to how their device operates, because their device is what is described in the specification. I understand the claims are different. Their device requires some kind of manual manipulation by the tech, but it still, it tells them when to do it, and it's after there's been flow for a while, and then it stops, and then they have to move it over, and then it flows again. But a seal is kicking in, not immediately. No, Judge Hughes, if you look at the way that the, if you look at the device that's described in their specification, if you watch the video, this is clear. These are really getting into factual questions. And I'm just trying to respond to your question. Because the claim doesn't require that the seal seal the vent. Every time you say the claim doesn't require something, you're convincing me that this needs to go back for a claim construction. Well, my point was simply, if you look, for example, at claim six, they tried to make a claim differentiation argument. In claim six, the seal. That's fine. I don't, I'm not buying that either. If we remand, and there is a claims construction, will this bring back to life your argument on the reservoir, so that you're going to win no matter what? Candidly, Judge Freeman, I hadn't thought that all the way through. Because, I mean, no one's argued here on the waiver argument on the reservoir element. So, and I think that Judge Connolly was well within his rights to call that waiver. But if this goes back, we'll hear from Mr. Perry as to whether that waiver disappears, and you're right back into the game on that argument. Well, to be clear, Judge Freeman, if this goes back, there are a legion of arguments that the district court will have to grapple with. Because of the posture this case was in, there were no, there was only one issue that was resolved on JMAL. There are other JMAL issues. There are other new trial issues, none of which were even yet briefed, let alone decided. So it is certainly possible that it would put the reservoir issue back into play in terms of how it would ultimately play out. At the end of the day, though, I think what fundamentally is key here is that the claims require two structures. And you can read that just straight up from the plain language of Claim 24. Excuse me, they require two features. And those features can't happen at the same time, just inherently. It cannot seal and invent at the same time. So you're telling us this is not claims construction because the only way to read the plain and ordinary meaning of that claim is that we need a vent and a seal that are present when the device sits on the shelf, and that no reasonable jury could look at this evidence and say that your device has that. That is absolutely my position with one modification, which is that it's, when it's on the shelf for sure, it's also when it's in the first operating mode. Because if you look at Claim 24, it recites a first operating mode in which blood can flow to the seal and that you have a vent configured to allow air. And that's an impossibility in the accused device. And that is why this is ultimately about a failure of proof. It's about an impossibility as opposed to being a claim construction issue. But even if viewed as a claim construction issue, I think that because of the plain and ordinary meaning of this Court's decision in Kyocera, we should prevail. I realize I'm well over my time. If the Court has any further questions on this. I have just one question. If we agree with you on the diverter issue, but don't on this other issue, does that affect what we would do in any way? No, they're entirely separate. The diverter issue, the 001 patent didn't go to trial. So they are entirely, they really are entirely separate, Judge Hughes. Okay. Thank you. Thank you, Judge Lurie. Thank you, Mr. O'Quinn. Mr. Perry, we'll give you four minutes if you need it. Thank you, Judge Lurie. Four quick points then, if I may. First, my friend, Mr. O'Quinn, fought like hell to make this not claim construction. Because if it is claim construction, then the verdict has to be reinstated under Weiland and Mustak. Second, I was shocked to hear the suggestion that there would be a remand for claim construction. It's not in their brief. It is forfeited and waived every which way but Sunday. Their whole appeal is that this was not claim construction. They can't now then get a remand for claim construction. And Judge Hughes, on whether the Becton presumption applies, we laid out in our blue brief at pages 39 to 44 why the Becton presumption has been overcome. They didn't respond at all because they said this isn't claim construction. We came back in our yellow brief at page 15 and explained why the Becton presumption is overcome by the claims, by the specification. And of course, there's no briefing on it. So if the court, I don't think the court can decide it or can remand it, but clearly they have forfeited this issue. Wouldn't it just be a new trial? You say the verdict has to be reinstated. But this, if it's not claims construction, if it is claims construction, then it has to be, the verdict has to be reinstated. But we'd have to let Judge Connolly construe the claim, wouldn't we? No, Your Honor. Both Mustak and Weiland say that if the judge, if the case goes to the jury on jury instructions that the other side does not object to, and there were no objections to these instructions, appendix 44 is the instruction on what claims were construed and what were not, then the jury returns a verdict. Any claim construction issue that is raised after that is gone. It's ineffectual. You can't change a verdict. In fact, we have a Seventh Amendment right now to that verdict because we have a finding of Am I talking about a new trial? There's no ground for a new trial because the properly instructed jury returned a reasonable verdict that is totally supported by the evidence. My friend, Mr. O'Quinn, also said that there's no evidence in the record. I guess you cited those two cases, but I'm somewhat unconvinced that we can't remand this for claim construction on this issue. Your Honor. At least it says that directly. Yes, Your Honor. Mustak says that. Weiland says that. I think we cited five cases. There's at least 20 that I know of, including unpublished cases. There is no case that I'm aware of where a case went to verdict on unobjected to instructions. And I emphasize that because sometimes this issue is preserved by objecting to the instruction, right? But if it goes to the jury on unobjected to instructions, it's too late. There's no case that I'm aware of from this court that has ever reversed, vacated, remanded. So I take it your argument is that if we find that this isn't a claim construction argument, then as they suggest, then we have to presume that your view of what this claim is was fair game for the jury, that it could be one structure, and that there's substantial evidence to support that. Correct, Your Honor. And let me answer that substantial evidence point. Because Mr. O'Quinn said there's no evidence that the porous plug is a seal before it's  He said that just now. You don't have to address that too much. I mean, I don't buy that. Curran's own instructional video, which was read to the jury, played to the jury in the record at Appendix 25516, says that the blood flows into the channel until it reaches the white porous seal. They call the plug a seal before it is wetted. And they recognize that event. So that's Curran's own materials. And you look at it, it's called a self-sealing plug in their FDA submission. So there's no doubt that there is substantial evidence, Your Honor. This case was tried. This case was tried to a jury. Let me just, let me, I'm really, you can tell I'm really struggling with this case. You both can. I'm just trying to figure out what to do with Judge Connolly's Jamal decision, where he says there has to be a seal and a plug, or seal and event at the same time, which necessarily implies he thinks that it's two structures. Correct, Your Honor. And for that, he cited Becton and said there has to be two structures. That's a claim construction. He reached that decision. So if we just wipe that out, then your view is that the plain and ordinary meaning of this claim has to encompass two structures or a unitary structure. Correct. Or that the defendant waived or forfeited the two-structure argument because they never made it. Only those claim constructions put in dispute have to be the same. Your view is the unitary structure argument was a lie. That's what you argued to the jury. They didn't object to that. And because of that, this, in your view, new claim construction argument that it had to be two separate structures is not permissible, and so it has to be reversed.  It was not raised on Daubert. There was no objection to the testimony. There was no objection to the jury instruction or a request for an alternative instruction. And again, if I go back to the Moustak case, you know, which says that when the case goes to the jury, when issues of claim construction, this is a direct quote from Moustak, when issues of claim construction have not been properly raised in connection with the jury instructions, it is improper for the district court to adopt a more detailed claim construction in connection with a JMO motion. But that's our case. Thank you, counsel. Thank you, Your Honor. I think we have your position. The case is submitted.